IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
AT GREEN BAY

JOSEPH K. SCHOMISCH
1693 Butte Des Morts Beach Rd                    CASE NO.
Neenah, WI 54956

      PLAINTIFF

                                     COMPLAINT AND JURY DEMAND

      - VS. -

TIFFIN MOTOR HOMES, INC.
c/o Timothy R. Tiffin, Registered Agent
105 2nd Street NW
Red Bay, AL 35582

      DEFENDANT

---

## PRELIMINARY STATEMENT

1.      This case involves claims asserted under the Wisconsin Commercial Code, the

      Magnuson Moss Warranty Act, the Wisconsin Lemon Law and the Wisconsin

      Deceptive Practices Act.

2.      Jurisdiction exists with this court because a federal claim exists in which

      there is more than $50,000 in controversy under 15 USC 2301 et seq,

      invoking 28 USC 1331, and/or the amount in controversy is more than

      $75,000 and is between citizens of different states, invoking 28 USC 1332.

3.      This case involves a defective 2020 Tiffin Phaeton 40IH recreational vehicle

-1-

("Rv") that defendant warranted and contracted to warrant but which it was not able to repair within a reasonable number of chances or a reasonable amount of time and whose warranty and/or contract defendant breached.

4.     The vehicle which is the subject of this dispute was built and warranted by Tiffin Motor Homes, Inc. ("Tiffin") and was acquired by Plaintiff in Wisconsin from Tiffin's authorized retail sales outlet, King's Enterprises of Wausau, Inc King's Campers ("King's Campers"). The subject vehicle was defective when acquired, had defects, problems and malfunctions when delivered to Plaintiff and thereafter, and ineffective warranty repair attempts were made upon the subject vehicle by Tiffin's authorized warranty repair facility and its representatives and agents in Wisconsin and in Alabama. The state where the relationship of the parties came into existence is Wisconsin because the obligations of defendant were created in Wisconsin and received by Plaintiff in Wisconsin, and defendant directly interacted with Plaintiff in Wisconsin.

## IDENTIFICATION OF PARTIES

5.     Joseph Schomisch is a natural person domiciled and residing in Wisconsin and a consumer and buyer within the meaning of applicable laws.

6.     Tiffin was at all times relevant a corporation doing business in Wisconsin and throughout the United States and is the manufacturer of the subject RV that Plaintiff acquired from Kings Enterprises of Wausau, Inc., doing business as

-2-

King's Campers ("King's Campers") in Wisconsin. Defendant has its principal place of business and is domiciled in and is a citizen of Alabama. Defendant was, at all times relevant, engaged in the business of selling and servicing recreational motor vehicles through its authorized dealerships and agents throughout the United States and including Kings Campers in Wisconsin.

7.    The Plaintiff acquired the subject RV from King's Campers in Wausau, Wisconsin in February 2020. At all times relevant, King's Campers was a supplier, merchant and an authorized retail seller and authorized warranty repair representative and agent for Tiffin in Wisconsin in all respects related to the sale and the attempted performance of warranty repair and service work upon the subject RV.

8.    Upon information and belief, Plaintiff alleges that Tiffin and King's Campers entered into a retail sales and service agreement whereby King's Campers agreed to allow Tiffin to control its operations by contractual terms which required that:

a.    Tiffin would appoint King's Campers as an authorized retail seller of new Tiffin Rvs and authorized warranty repair facility in Wisconsin;

a.    Tiffin would appoint King's Campers as an authorized warranty repair facility in Wisconsin;

c.    King's Campers was required by Tiffin to "work with" and coordinate

-3-

with Tiffin to determine what product lines and stocking and sales
quantity objectives would exist at King's Campers and to complete a
Tiffin "Stocking and Sales Objective" agreement which would bind
King's Campers to meet the "objectives" or accept financial penalties
from Tiffin;

d.    work with Tiffin to meet any state regulatory requirements for King's
Campers, including the provision by Tiffin and King's Campers to
provide any necessary documentation to show that King's Campers
was an authorized seller of Tiffin Rvs and products;

e.    King's Campers agreed with Tiffin to allow Tiffin to control King's
Campers' available inventory of Tiffin products and to accept Tiffin's
discretionary decision to allocate the Tiffin products that King's
Campers would be able to sell;

f.    to comply with Tiffin's basic minimum inventory of new Tiffin
recreational vehicle stock requirements or accept financial penalties
from Tiffin;

g.    to permit Tiffin to review its agreement with King's Campers annually;

h.    to accept changes which Tiffin would make to the required Tiffin
product inventory levels King's Campers was required to maintain for
retail sale or accept financial penalties from Tiffin;

-4-

i.      King's Campers to submit its annual financial statements to Tiffin;

o.      for King's Campers to supply Tiffin any other reports and records which Tiffin might require;

p.      to maintain and keep available a minimum number of records that support the payments made by Tiffin to King's Campers for warranty repairs and recalls that King's Campers performed on behalf of and for Tiffin;

r.      to permit Tiffin to make examinations and audits and to reproduce and take copies, of any of the accounts and records which Tiffin required King's Campers to keep and maintain;

s.      to accept the discontinuance, change, or replacement of any Tiffin product without notice and without choice;

t.      to promote and sell and deliver to King's Campers' "full potential" the retail sale and service of Tiffin products;

v.      for King's Campers to conduct advertising of Tiffin products and participate in shows and exhibitions at the expense of King's Campers;

w.      to maintain a complete service shop and offer service to all Tiffin product owners;

x.      to carry in stock a quantity of inventory of parts and accessories for Tiffin products in an amount that is in the discretion of Tiffin;

-5-

y.      for King's Campers to purchase and maintain in good condition King's
        Campers' tools and equipment including such additional tools which
        Tiffin may require King's Campers to have at King's Campers' expense;

z.      to perform such pre-delivery service as Tiffin may require in relation to
        the retail sale by King's Campers of Tiffin products;

aa.     to make such post-delivery adjustments, repairs and servicing on Tiffin
        products sold by King's Campers as Tiffin may require, along with other
        terms and conditions on and business practices of how King's Campers
        may operate its business, and by virtue of such, King's Campers is the
        agent and/or general agent and/or agent with implied authority
        and/or agent with express authority and/or agent with apparent
        authority of Tiffin; and

bb.     and in numerous other manners is the agent of Tiffin.

9.   As this complaint is being filed, for at least ten years Tiffin has engaged in
     substantial business activities with King's Campers in the state of Wisconsin
     involving millions of dollars of Tiffin goods and services being advertised and
     sold by King's Campers in Wisconsin, to Wisconsin residents and others, both
     by shipping into this state and distributing in this state its new recreational
     motor vehicles and parts and by its continuing and ongoing substantial
     business activities and relationship with its authorized retail sales and

-6-

warranty service dealers for them to perform Tiffin branded sales activities and Tiffin branded warranty repair and service work in Wisconsin on Tiffin's behalf at Tiffin's authorized repair facilities located in Wisconsin, including but not limited to King's Campers. In fact, as this Complaint is being filed, King's Campers has almost $2,000,000 worth of new Tiffin RV's which it is advertising for retail sale. In addition, upon information and belief, Tiffin pays King's Campers thousands of dollars each year for the performance of Tiffin warranty repairs and services to be performed by King's Campers for Tiffin. Tiffin thereby conducts substantial business in and receives substantial revenue from the state of Wisconsin.

10. Tiffin's internet web site lists King's Campers as an authorized retail sales and service facility of Tiffin recreational motor vehicles in Wisconsin and directs interested consumer to King's Campers and each of its other authorized retail sales and service facilities.

## FIRST CLAIM: BREACH OF WARRANTY AND/OR CONTRACT

11. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

12. This claim is for breach of warranty and/or contract of warranty by Tiffin in Wisconsin.

13. Plaintiff brings this action for monetary damages and equitable remedies

-7-

because of serious and chronic defects that the subject RV has experienced and exhibits.

14. The RV has been and is defective in Tiffin's materials and/or workmanship and the defects appeared during the term of Tiffin's warranty beginning shortly after Plaintiff took delivery of the subject RV, and Tiffin and its authorized warranty repair and service representatives and agents have been unable to correct the defects within a reasonable number of opportunities and a reasonable amount of time.

15. Tiffin, with intent to sell, distribute, and/or increase the consumption of and/or dispose by sale its merchandise and/or a thing offered by it, directly or indirectly, to the public for sale or other distribution, and/or with intent to induce the public to enter into a contract or obligation relating to the purchase and/or sale of merchandise and/or services, made, published, disseminated, circulated, and/or placed before the public or caused same, in Wisconsin, in a publication and/or in the form of a pamphlet and/or in any other similar way an advertisement, announcement, statement or representation to the public relating to such purchase and/or sale of such merchandise and/or to the terms or conditions thereof, which contained an assertion, representation or statement of fact which was untrue, deceptive or misleading, to the harm and injury of Plaintiff.

-8-

16. At all times relevant, King's Campers was a supplier and merchant and an authorized representative and agent of Tiffin. King's Campers was authorized by Tiffin to make retail sales of new Tiffin Rv recreational vehicles, motor homes, and products, and to act for it in all respects related to the delivery of products and literature and written representations, and of warranty-covered repair and service work performed or attempted on new Tiffin Rvs and products, including the subject vehicle.

17. Prior to February 13, 2020, Plaintiff visited a Tiffin authorized retail sales dealer to look at Tiffin motorcoaches and in the process Plaintiff received a Tiffin brochure on 2020 Tiffin vehicles which made representations from Tiffin about the Tiffin 2020 Phaeton motorcoach, including representations of Luxury, performance, elegance, comfort, innovative engineering, conveniences, durability, reliability, performance, control, "wherever your journey takes you" and warranties against defects in materials and workmanship in the Tiffin motorcoach, without limitation, along with a wide variety of interior and exterior equipment benefits and uses. In addition, Tiffin said a new Tiffin Phaeton would come with a one year, five year, and ten year warranty from Tiffin and referred Plaintiff to the Tiffin website to the "full written limited warranty" Tiffin would give with a new Phaeton motorcoach.

-9-

18. On the Tiffin website, the terms of the Tiffin new motorcoach warranty are stated as being:

    a)     10 YEAR OR 50,000 MILES UNITIZED CONSTRUCTION LIMITED WARRANTY: The structural integrity of the welded frame of House portion is warranted for 10 years or 50,000 miles of use.

    b)     5 YEAR OR 50,000 MILES DELAMINATION LIMITED WARRANTY: We guarantee against all exterior fiberglass delamination or wall separation for 5 years or 50,000 miles of use.

    c)     1 YEAR OR 12,000 MILES LIMITED WARRANTY: Your coach is warranted against defects in materials and workmanship for 12 months or 12,000 miles of use.

19. On the Tiffin website, to which the brochure refers, the terms which are stated to be the Tiffin warranty do not include any preconditions, exclusions or limitations of any type upon the above terms.

20. On or about February 13, 2020 the parties entered into a consumer transaction, in that Plaintiff agreed to acquire from King's Campers, King's Campers agreed to sell to Plaintiff, under the terms of a finance contract with Bank of the West, and defendant contracted and/or agreed to warrant the vehicle to be free from defects and/or that it would repair and/or replace any defect which it contracted and/or warranted against, the goods being a

-10-

certain 2020 Tiffin Phaeton 40IH recreational vehicle believed to bear VIN # 5VBPA57A5LA120616, and whose total cost including financing was about $414,488.00.

21. Plaintiff acquired the vehicle in reliance on the representations that Tiffin had made and the existence of a written warranty and/or contract of warranty from Defendant and on advertising representations and/or warranties of Defendant.

22. An integral part of the purchase of the RV was the representations and advertising representations made to Plaintiff and the public by Tiffin

23. Plaintiff would not have purchased the subject RV but for the representations made by Tiffin to induce Plaintiff into making the purchase.

24. Any limitation on the Tiffin express warranty attempted to be created and/or made applicable to Plaintiff by Tiffin is unconscionable pursuant to applicable Law. Specifically:

   a. If made, the limitation was made in a pre-printed adhesion contract for which the term could not be negotiated;

   b. If made, the limitation and/or disclaimer was the result of legal assistance to Tiffin, which they each were able to purchase because of the relative advantages they maintain over the Plaintiff;

   c. The substance of the bargain should not allow Tiffin to sell a very

-11-

expensive defective product and receive a large profit, while at the same time washing their hands of the product and leaving no reasonable recourse for Plaintiff;

d.    If made, the disclaimers and/or limitations are each a direct result of a superior bargaining position because of their relative sophistication and knowledge and/or is a calculated and intended method designed to attempt to escape liability for producing and distributing and selling a defective RV.

25.    Pursuant to applicable law, Plaintiff received an implied warranty that the product would be fit for its ordinary purpose and/or use. Pursuant to applicable law, Plaintiff received an implied warranty of merchantability. Furthermore,

a.    These implied warranties were each not disclaimed or could not be disclaimed, or

b.    In the alternative were each not properly disclaimed in that the disclaimer was not written so that a reasonable person ought to have noticed or comprehended same, specifically:

i.    It was not written in all capitals;

ii.    It was not in a different font or color; and

iii.    It was not on the face of the retail installment contract and/or

warranty. or

c.   It was not conscionable pursuant to the Magnuson-Moss Warranty Act and/or applicable law. Specifically:

   i.   If made, the disclaimer was made so in a pre-printed adhesion contract for which the term could not be negotiated;

   ii.   If made, the disclaimer was a result of legal assistance to Tiffin and said entity was able to purchase the legal assistance because of its relative advantages it maintains over the Plaintiff;

   iii.   Moreover, the substance of the bargain is such that Tiffin should not be permitted to sell an expensive defective produce and to receive a large profit, while at the same time washing its hands of the product leaving no reasonable recourse for Plaintiff;

   iv.   If made, the disclaimers and/or limitations are each a direct result of a superior bargaining position because of the relative sophistication and knowledge and/or is a calculated and intended method designed to attempt to escape liability for producing and distributing and selling a defective RV.

26.   The purpose of defendant's warranty was (a) to get the RV fixed within a reasonable amount of time and within a reasonable number of attempts if a defect arose, and (b) to give Plaintiff confidence in the reliability and quality

of the RV, and (c) to give Plaintiff confidence in the representations of defendant about itself and the subject vehicle and the vehicles defendant designed and built, and (d) to give Plaintiff confidence in defendant itself as a responsible company that lived up to its representations, its word, and its warranties.

27.     After acquiring the vehicle, Plaintiff experienced repeated problems with various aspects of the RV  including the parts which were warranted by Tiffin

28.     After acquiring the vehicle, Plaintiff discovered that it did not conform to the representations of defendant inasmuch as it developed continuing malfunctions, defects and problems and that was abusive and/or unfair and/or deceptive and/or unconscionable to Plaintiff.

29.     The vehicle has been in for warranty and defect repair and service multiple times for a laundry list of  defects, problems and malfunctions far exceeding what a reasonable person would expect if the vehicle had been manufactured right in the first place or repaired right by defendant.  The vehicle has been out of service by reason of repairs to the RV an unreasonable number of days and a time far exceeding what a reasonable person would reasonably expect for the quality of which defendant represented the product would be. The service work was performed under warranties from defendant at various times and dates since purchase.

-14-

30. The defects in the RV, which were substantial and existed in the materials and workmanship caused by defendant, included, but are not limited to, Adjust night shade; Replace cook-top draw slide; Power solar shade; Rust wheel wells; Steering wheel cocked; Rear fenders need adjusted; TV has line; DS Slide carpet ripped; Bathroom counter top not flush; Missing safe key; Drawer liner fell out; Closet lights not working; Breaker box tab broken; Entry door leaks; Dash rattles; Bathroom back splash curves; Bathroom wall panel unfinished; Shower handle will not lock; DS storage compartment missing screw; Window awning straps hitting paint; Adjust washer fluid; Rear engine cap; Door rattles; Dealer Paint issues; Client paint issues; Lower engine grill needs adjusted; Paint drips; Gouge back DS; Cracked grill; Fish eyes on PS slides; Bow in engine cover; Crooked grill; Back bathroom faucet; PS front slide hesitates; Wood trim on PS pulling away; Crack on bottom entrance door; Crack on rear cap top vent door; Rear jack; General Paint issues; Front slide bows when all way in; Rear slide underside over-spray; Awning hardware damaged; Burn in paint; Split in paint front of entrance door; Overspray of gray paint; Runs on cargo doors; Run below drivers window; Large scratch LS kitchen window; Gouge bottom front slide; Masking tape under paint left tail light; Crack shower surround; Shower door latch magnets fell out; Bottom plate shower not secure; Unfinished edge shower skylight;

-15-

Ceiling fan ticking; Upper vanity over sink crooked; Unfinished bottom wall; Loose trim kitchen sink; Wireless phone charger not working; Both seats loose; DS Kitchen upper cabinets not level; Door 3 Upper Cabinet bottom lifting/top falling; Entry steps don't stay out; Rough edges on all slide outs , among other things.

31. Plaintiff have been unable to use the vehicle in the expected, normal and customary manner because of the substantial defects and problems and malfunctions experienced with the subject RV and Plaintiff's loss of confidence in the reliability of the subject RV and loss of confidence in the ability of defendant, jointly to live up to its warranties and/or promises and/or representations.

32. Defendant was notified of defects and non-conformities in the vehicle and the authorized repair facility's failed repair attempts repeatedly prior to filing this case.

33. In all respects, Plaintiff substantially if not completely performed his obligations under the RV's warranty from defendant and defendant did not perform its obligations, as set forth herein above and below.

34. Because of the contract and/or warranty-covered defects, Plaintiff notified defendant and/or one of its authorized servicing dealers of the numerous defects and on various dates delivered the motor coach into the possession of

-16-

defendant and/or one of its authorized servicing dealers at their cost and/or expense beginning shortly after the sale.

35. The RV went into King's Campers, a factory warranty authorized repair shop on February 17, 2020 for nine (9) days for 3 defects reported:

- Adjust Night Shade Limits
- Adjust Step Draw
- Replace Draw Slide under Cook-top

36. On May 13, 2020 the RV was returned to King's Campers, a factory authorized repair facility for fifty (50) days and another list of twenty-six (26) defects reported:

- Power Solar Shade
- Rust in Wheel Wells
- Steering Wheel Cocked
- Rear Fenders Need Adjusted
- Tv Has Line
- Drivers Side Carpet Ripped
- Bathroom Counter Top Not Flush
- Missing Safe Key
- Drawer Liner Fell out
- Closet Lights Not Working
- Breaker Box Tab Broken
- Phone Charger Not Working
- Entry Door Leaks
- Dash Rattles
- Bathroom Back-splash Curves
- Bathroom Wall Panel Unfinished
- Shower Handle Will Not Lock
- Drivers Side Storage Compartment Missing Screw
- Window Awnings Straps Hitting Paint
- Adjust Washer Fluid
- Rear Engine Cap
- Door Rattles

-17-

- Dealer Paint Issues
- Client Paint Issues
- Rear Sink Water Runs over Counter
- Lower Engine Grill Needs Adjusted

37.    On August 17, 2020, the RV was transported from Wisconsin to the Tiffin

factory in Red Bay, Alabama for repairs which began on September 1, 2020

for thirty-one (31) days and fourteen (14) defects reported:

- Paint Drips on Slides
- Gouge on Drivers Side Back
- Cracked Grill
- Rough Edges Passenger Side Slide
- Fish Eyes on Passenger Side Slides
- Cargo Doors Thick Paint Edges
- Bow in Engine Cover
- Crooked Grill
- Back Bathroom Faucet Water Runs over Counter
- Passenger Side Slide Hesitates
- Wood Trim on Passenger Side Pulling Away
- Crack on Bottom Entrance Door
- Crack on Rear Cap Top Vent Door
- Rear Jack

38.    On December 10, 2020, the RV was transported again from Wisconsin to the

Tiffin factory in Red Bay, Alabama for thirty-eight (38) days for another list of

twenty-nine (29) defects reported:

- General Paint Defects
- Both Slides Rough Pitted Edges
- Front Slide Bows When All the Way in
- Cargo Doors Have Drips/thick Edges
- Rear Slide Over-spray on Underside
- Awning Hardware Damaged
- Burn in Paint
- Split in Paint Front of Entrance Door

-18-

- Over-spray of Gray Paint
- Runs on Cargo Doors
- Rough Edges and Pitted on Both Slides
- Run below Drivers Window
- Large Scratch Left Side Kitchen Window
- Gouge Bottom Front Slide
- Masking Tape under Paint Left Tail Light
- Crack Shower Surround
- Shower Door Latch Magnets Fell out
- Bottom Plate Shower Not Secure
- Unfinished Edge Shower Skylight
- Ceiling Fan Ticking
- Upper Vanity over Sinks Crooked
- Unfinished Bottom Wall
- Loose Trim Kitchen Sink
- Wireless Phone Charger Not Working
- Both Seats Loose
- Drivers Side Kitchen Upper Cabinets Not Level
- Upper Cabinet Door 3 Bottom Lifting and Top Falling
- Entry Steps Don't Stay out
- Rough Edges on All Slide Outs

39.     Plaintiff had a number of telephone calls with defendant and its dealers
and/or other entities for help with the RV and during most if not all of these,
Plaintiff was in Wisconsin.

40.     In addition to the above phone calls, a series of communications occurred
between the parties, with Plaintiff sending and receiving communications
while in Wisconsin for most if not all of them.

41.     After being in the repair shop multiple times and being out of service a total of
more than 119 days or more within the first year and accumulating more
than 60 or more warranty-covered defects since its acquisition, Plaintiff

-19-

notified defendant that he wanted his money back because of the failure of the Tiffin and its motorcoach to comply with defendant's representations and promises, but defendant would not do that.

42. In spite of defendant's obligations, when Plaintiff complained of the inability of defendant and its authorized warranty-repair facility to repair the vehicle, defendant did not repair or replace or repurchase the subject vehicle.

43. Prior to filing this case, Plaintiff provided notice to defendant about its untrue, deceptive, misleading advertisements representations, advertisements, acts, practices and failures.

44. Instead of performing as represented, defendant did not repair all defects in the vehicle once and for all time. In short, the defects were not repaired, Plaintiff lost all confidence in the reliability and quality of the RV, and Plaintiff lost all confidence in defendant as a company and its authorized representatives and agents to comply with the Tiffin warranty.

45. As a result defendant breached its express and/or implied warranties and/or contract of warranty and made one or more untrue, deceptive, misleading advertisements representations, advertisements, acts, practices and failures.

46. As a result, defendant's warranty and/or contract of warranty failed of its essential purpose and any limitations contained within the warranty and/or

-20-

contract are null and void and Plaintiff are entitled to all applicable legal and equitable remedies in law.

47. In addition, any limitations contained within the warranty and/or contract of warranty are null and void and without consideration and Plaintiff is entitled to all applicable legal and equitable remedies in law.

48. Through its advertising and otherwise, defendant represented that the recreational vehicles it built were fit for the purpose for which they were intended and/or designed, that they are safe and suitable vehicles for their intended and/or designed use, reliably operable for private transportation and recreational use and Plaintiff acquired the vehicle in reliance upon the belief that defendant possessed a high degree of manufacturing skill and judgment.

49. Through its advertising and otherwise, defendant represented that the recreational vehicles which it manufactured were of merchantable quality, fit and in proper condition for the ordinary use for which such vehicles are used and/or designed and Plaintiff relied on such, but the vehicle involved in this case was not, however, of merchantable quality.

50. The malfunctions and defects in the vehicle severely and substantially impaired its use and/or safety and/or value to Plaintiff.

51. Defendant's failure to timely fix all of the vehicle's defects has caused Plaintiff

to lose confidence in the reliability of the subject motor vehicle and in the ability of defendant to repair the vehicle's defects.

52.    Plaintiff provided defendant and/or one or more of its authorized dealers and agents with a reasonable number of opportunities to repair the vehicle but they have each neglected, failed, refused or otherwise been unable to do so within a reasonable amount of time or a reasonable number of attempts.

53.    As a result of the above facts, defendant breached its warranties and/or contract of warranty and/or representations with respect to the vehicle.

54.    One or more of the defects and malfunctions in the vehicle were covered under the terms of defendant's warranties and/or contract of warranty, and defendant failed to repair the vehicle, thereby diminishing the use and/or safety and/or value of the vehicle.

55.    Defendant and/or one or more of its authorized dealers had notices of the breaches of the warranty and/or contract of warranty and the defective condition of the subject motor vehicle within a reasonable time.

56.    Plaintiff suffered and shall continue to suffer actual, incidental and consequential damages as a direct and proximate result of the inability or other failure of defendant's authorized representatives and agents to repair or replace the vehicle or refund its price.

**SECOND CLAIM: MAGNUSON MOSS WARRANTY ACT**

-22-

57.   The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

58.   This claim is for breach of express and/or implied warranties and/or contract of warranties and/or defendant's violation of its obligations under the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, et seq, including but not limited to its obligations to comply with its warranties and/or contract of warranties and/or to make its warranty term disclosures and its actions in full compliance with all provisions of the Warranty Act and its applicable regulations.

59.   As a result of the above, among other things, defendant has breached its obligations under the Warranty Act and/or its applicable disclosure and/or other regulations.

60.   As a result of the above, among other things, defendant breached its obligations to make its warranty term disclosures and its actions in full compliance with all provisions of the Warranty Act and the applicable Code of Federal Regulations.

61.   As a result of the above, inter alia, defendant is in violation of the Warranty Act.

**THIRD CLAIM: WISCONSIN DECEPTIVE PRACTICES ACT**

62. The allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein.

63. This claim is for violation of the Wisconsin Deceptive Practices Act, 100.18 et seq, by defendant.

64. As a result of the above, among other things, one or more untrue, deceptive, misleading advertisements representations, advertisements, acts, practices and failures were made by defendant, including but not limited to:

    a. Representing that the subject of a consumer transaction has performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have

    b. Representing that the subject of a consumer transaction is of a particular standard or quality when it is not and the supplier knows or should reasonably know that it is not

    c. Representing that the transaction involves or does not involve a warranty and/or contract, a disclaimer of warranties, or other rights, remedies or obligations when the representation was false and the supplier knows or should reasonably know that the

-24-

representation is false

d.     Representing that the supplier is able to deliver or complete the subject of the consumer transaction within a stated period of time when the supplier knows or should reasonable know the supplier could not

e.     Breach of express and/or implied warranties and/or contract

f.     Violation of the Magnuson Moss Warranty Act and/or its applicable regulations

g.     Violation of other consumer protection statute(s)

h.     Failing to remedy defects in a warranted vehicle within a reasonable number of attempts

i.     Failing to remedy defects in a warranted vehicle within a reasonable amount of time

j.     Failing to honor a request to take the vehicle back and/or rescind and/or cancel the sales and warranty and/or contract transaction

k.     Failing to honor a request to take the vehicle back and rescind and/or cancel the sales and warranty and/or contract transaction within a reasonable amount of time

l.     Including one or more unconscionable and/or unreasonable terms in the written warranty document(s) and/or one or more terms

and/or conditions not fully and conspicuously disclosed in simple

an readily understood language

m.  Stalling and/or delaying the performance of a legal obligation

n.  Representing that defects have been repaired when in fact they

were not

o.  Representing the supplier is able to deliver or complete the subject

of a consumer transaction within a stated period of time when the

supplier knows or reasonably should know the supplier could not

p.  Soliciting a person to enter into a contract or agreement that

contains terms and/or conditions that are not fully and

conspicuously disclosed in simple an readily understood language,

terms that are oppressively one sided or harsh and/or in which the

terms unduly limit the person's remedies, and/or in which the price

is unduly excessive, and there was unequal bargaining power that

let the person to enter into the contract or agreement unwillingly or

without knowledge of the terms of the contract or agreement

q.  Refusing to recognize the rights of buyers under the Uniform

Commercial Code when the only remedy afforded by its limited

warranty failed of its purpose

r.  Knowingly distributing goods for retail sale to consumers that it

-26-

knows or should know are defective without disclosing such

s.  Knowingly distributing goods for retail sale to consumers that it knows or should know are likely to be defective without disclosing such

t.  Knowingly distributing goods for retail sale to consumers that it knows or should know will become defective after receipt by the retail seller and before purchase by the retail buyer without disclosing such

u.  Knowingly distributing goods for retail sale to consumers that it knows or should know are likely to become defective after receipt by the retail seller and before purchase by the retail buyer without disclosing such

v.  Knowingly distributing goods for retail sale to consumers that it knows or should know will become defective during the first year after purchase by the retail buyer without disclosing such

w.  Knowingly distributing goods for retail sale to consumers that it knows or should know are likely to become defective during the first year after purchase by the retail buyer without disclosing such

x.  Failing to make replacement of warranted defective parts available to a consumer within a reasonable time

-27-

y.     Failing to make a refund of the cost of warranted goods when it has

failed to make replacement of warranted defective parts available

to a consumer within a reasonable time

z.     publishing more than one version of its warranty, one or both of

which necessarily are untrue, deceptive, and/or misleading by

describing terms that are inaccurate and/or incomplete and/or

misleading.

65.     As a result of the above, inter alia, defendant made one or more untrue,

deceptive, misleading representations, advertisements, acts, practices and

failures acts, omissions, or practices in violation of the Wisconsin Deceptive

Practices Act, in relation to a consumer transaction between the parties

and/or in relation to a consumer transaction between Plaintiff and a supplier

in relation to the 2020 Tiffin Phaeton 40IH.

**FOURTH CLAIM: WISCONSIN LEMON LAW**

66.     The allegations of all other paragraphs and claims in this pleading are

incorporated as if fully rewritten herein.

67.     This claim is for violation of and only brought under the Wisconsin Lemon

Law, Wis. Stat. § 218.0171, by defendant.

68.     Plaintiff performed all conditions precedent to private enforcement of the

Wisconsin Lemon Law. The obligations of the defendant under the Wisconsin

-28-

Lemon Law were not complied with by defendant.

69. Plaintiff brings this action for monetary damages and/or equitable remedies because of serious and chronic nonconformities that the subject RV has experienced and exhibits and which are subject to the Wisconsin Lemon Law.

70. The vehicle involved in this case qualifies as a "lemon", both generically and under the Wisconsin Lemon Law.

71. As a result of the allegations above and below, among other things, defendant failed to comply with its obligations and requirements under the Wisconsin Lemon Law to the injury of Plaintiff.

80. At all times relevant and all within the meaning of Wisconsin Lemon Law, Plaintiff was a consumer in that Plaintiff was a purchaser, other than for purposes of resale, of a motor vehicle which was used primarily for personal, family or household purposes and/or are each a person entitled to enforce the obligations of the manufacturer's warranty.

81. At all times relevant, the subject RV in this case was a motor vehicle within the meaning of Wisconsin Lemon Law in that it was not an off-road vehicle and it was a motor vehicle that was subject to a manufacturer's express warranty at the time of original delivery to Plaintiff and was purchased and transferred to Plaintiff in Wisconsin.

82. That during the term of said warranty, and within the earlier of one year from

-29-

the date of delivery or the expiration of said warranty, the subject RV was out of service for more than 30 days because of warranty nonconformities.

83. That upon information and belief, during the term of said warranty, and within the earlier of one year from the date of delivery or the expiration of said warranty, the subject RV has been the subject of four unsuccessful attempts to repair the same warranty nonconformity (or nonconformities) as that term is defined in sec. 218.0171(1)(f), Wis. Stats.; that upon information and belief, the warranty nonconformity or nonconformities continued thereafter.

84. That on December 17, 2020, the Plaintiff sent notice to the defendant of such conditions or defects and demanded that the defendant accept the return of the subject RV and provide the Plaintiff with a refund in accordance with the Lemon Law; upon information and belief, said Notice was received by the defendant on January 4, 2021.

85. That despite said notice, the defendant failed or refused to provide the appropriate relief provided for by the Lemon Law sought by the Plaintiff in a timely manner without imposing conditions not required by the Wisconsin Lemon Law.

86. That upon information and belief, no certified informal dispute settlement procedure, as defined in sec. 218.0171(4), Wis. Stats., is available to the

-30-

Plaintiff; that consequently, the Plaintiff may bring this action pursuant to sec. 218.0171, Wis. Stats.

87. That since the subject RV has been out of service a total of thirty (30) or more days due to warranty nonconformities, and the defendant did not provide the appropriate relief provided for by the Wisconsin Lemon Law sought by the Plaintiff, in a timely manner, the defendant violated sec. 218.0171, Wis. Stats., entitling the Plaintiff to the choice of either a comparable new motor vehicle or rescission of the afore-described purchase agreement, and the refund of all the monies described herein that were paid by the Plaintiff, together with all other relief provided for by such law; that alternatively, since the subject RV was made available on at least four occasions for the repair of the same warranty nonconformity (or nonconformities) that substantially impairs the use, value or safety of the subject RV, and the warranty nonconformity (or nonconformities) continued thereafter and the defendant did not provide the appropriate relief provided for by the Wisconsin Lemon Law sought by the Plaintiff, in a timely manner, the defendant has violated sec. 218.0171, Wis. Stats., entitling the Plaintiff to the choice of either a comparable new motor vehicle or rescission of the afore-described purchase agreement, and the refund of all monies described herein that were paid by the Plaintiff, together with all other relief provided for by such law.

-31-

**WHEREFORE**, judgment is demanded against defendant as deemed proper and lawful by the Court, cumulatively and/or alternatively as follows:

## PRAYER FOR RELIEF

1.      On the first claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for more than $50,000 and in such amount as may be proven at trial;

2.      On the second claim, statutory and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

3.      On the third claim, damages and/or statutory damages, and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial;

4.      On the fourth claim, damages and/or statutory damages, and other damages, remedies, and relief as deemed proper and lawful by the Court, for each and every violation that may be proven at trial

## ALTERNATIVE PRAYER FOR RELIEF

Or, in the alternative to the damages set forth in the prayer above on any appropriate claim as proven by the evidence and allowed by law, rescission and/or revocation of acceptance plus all damages and/or statutory remedies and relief as deemed proper, equitable and lawful by the Court, for each and every violation

which may be proven at trial;

**Plus** on each and every claim, expenses of suit and litigation, interest from the date of acquiring the RV, and an Order finding Plaintiff to have rescinded and/or revoked acceptance, reasonable attorney fees, plus all costs, and any and all other legal and equitable relief deemed necessary and just.

Plaintiff demand trial by jury on all claims and issues.

/s/ Susan M. Grzeskowiak_____
SUSAN M. GRZESKOWIAK
Lemon Law Justice Center, LLC
19275 W Capitol Drive
Suite 201
Brookfield WI 53045
PH: (414) 225-0260
FAX: (414) 225-9666
susan@lemonlawjusticecenter.com

/s/ Ronald L Burdge_____
RONALD L. BURDGE
Burdge Law Office Co LPA
8250 Washington Village Drive
Dayton, OH 45458-1850
Telephone:    937.432.9500
Fax:          937.432.9503
Email:        Ron@RVLemonLaw.com

ATTORNEYS FOR PLAINTIFF

Z:\data\Schomisch\Core Pleadings\Core Complaint aj 032321.wpd

-33-